IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01508

JOE O'DEA,

and

JOE O'DEA FOR SENATE, INC.,

    Plaintiffs,

v.

CHRISTIAN PRINTERS, INC.,

and

JOHN DOE ORGANIZATION,

    Defendants.

## COMPLAINT AND REQUEST FOR PRELIMINARY INJUNCTION

Plaintiffs Joe O'Dea ("O'Dea") and Joe O'Dea for Senate, Inc., ("the Campaign") file this Complaint against Defendant Christian Printers, Inc., ("Christian Printers"), and Defendant John Doe Organization ("Doe"), for fraudulent and other wrongful conduct directed against Plaintiffs, including but not limited to, willful violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil conspiracy, and defamation.

## PARTIES

1.  O'Dea is and was at all relevant times a citizen of the State of Colorado, residing in Arapahoe County, Colorado.

2. The Campaign is the principal campaign committee, designated and authorized by O'Dea under 52 U.S.C.S. § 30102(e)(1), with its registered address at 4950 S. Yosemite Street, F2-225, Greenwood Village, CO 80111.

3. On information and belief, Defendant Christian Printers is a commercial printing company responsible for the misconduct described herein, located at 2700 Bell Ave, Des Moines, IA 50321.

4. On information and belief, Defendant Doe is believed to be a political action committee hostile to O'Dea's participation in the general election, the particulars of which are unknown to Plaintiffs at this time. The identity is unknown because Christian Printers and Doe are violating numerous state and federal laws by failing to identify the responsible organization. More than one other organization may be behind the illegal scheme described in this Complaint.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims presented arise under RICO, 18 U.S.C. § 1961, *et seq*.

6. This Court has supplemental jurisdiction over the related claims asserted herein. 28 U.S.C. § 1367.

7. This court is a proper venue for this action under 28 U.S.C. § 1391(b), and under 18 U.S.C. §1965, because the events giving rise to the claim occurred in this judicial district.

**FACTUAL ALLEGATIONS**

*Colorado Primary Elections*

8. The State of Colorado holds regularly scheduled state elections every two years, a state Primary Election in June, and a General Election in November. The nominated candidates

from each party's primary ballot will be placed on the November General Election ballot. The winner of the November General Election will hold office.

9. The Colorado Primary Elections are scheduled to take place on June 28, 2022.

10. In Colorado, the Primary Election is conducted on a semi-closed basis, meaning that only those registered for that party and unaffiliated voters may participate in a party's primary. C.R.S. § 1-7-201(1), (2.3).

11. On October 7, 2021, O'Dea announced his campaign for Colorado's 2022 U.S. Senate contest, seeking to win the Republican Party nomination in the Primary Election. His opponents in that election include state Representative Ron Hanks.

12. As part of his campaign, O'Dea has invested a significant amount of his own money, amounting to no less than $630,000.

***The Illegal Scheme to Misrepresent O'Dea & the Campaign***

13. Beginning the week of June 6, 2022, progressive and other democratic-aligned groups, including ProgressNow Colorado, announced their intent to intervene in the closed Republican Primary Election. Bente Birkeland, *The big new player in Colorado's Senate GOP primary? Democratic groups* COLO. PUBLIC RADIO (June 8, 2022), https://www.cpr.org/2022/06/08/colorado-senate-republican-primary-democrat-groups/.

14. On information and belief, part of the coordinated intervention effort is the use of false electioneering communications to discredit O'Dea, and elevate the profile of Rep. Ron Hanks, who is largely believed to be a less serious threat to the Democratic nominee, Sen. Michael Bennet, in the Colorado General Election. Natalie Allison, *Dems meddle in Senate primary to advance hardline MAGA Republican* POLITICO (June 9, 2022),

https://www.politico.com/news/2022/06/09/dems-meddle-in-colorado-senate-gop-primary-00038294 ("Democrats are aggressively advancing the campaign of a hardline MAGA Senate candidate in a last-ditch effort to elevate him over a moderate Republican who is viewed as a more serious threat to Democratic Sen. Michael Bennet.").

15. The scheme includes false and misleading electioneering communications, which were mailed to Colorado voters during the weeks of June 6 and 13, 2022 (the "Mailers"). Ex. 1-5.

16. The Mailers, which were prepared and mailed as a result of actions taken by Defendants, are oversized and professionally put together. Given their wide distribution and professional content, the total cost of the Mailers is estimated at over $1,000,000. *Id.* (noting that one "left-wing super PAC" was spending $800,000 a week to "meddle in the Republican primary").

17. On information and belief, more than 400,000 persons in the State of Colorado have received the Mailers.

***The Mailers are False, Misleading, and Defame O'Dea***

18. The Mailers allege that O'Dea "spoke with his wallet" and "[g]ave hundreds in campaign contributions to Democrat John Hickenlooper" after "Colorado's Democratic Governor signed laws restricting gun rights," Ex. 1; Ex. 4.

19. Contrary to this ad, O'Dea does not support restrictions on gun rights, and indeed has been endorsed by gun rights advocates, including the Colorado State Shooting Association, the official state chapter of the National Rifle Association. Colorado State Shooting Association, *CCSA Endorsement: U.S. Senate* (June 6, 2022)

https://www.cssa.org/content.aspx?page_id=5&club_id=243984&item_id=76758 ("Joe O'Dea . . . will support the 2nd Amendment").

20. The Mailers allege that Rep. Ron Hanks won "the endorsement of the Colorado Republican Party" and is "ENDORSED by the COLORADO REPUBLICAN PARTY." Ex. 2; Ex. 5.

21. The obvious implication of this statement is that O'Dea was not endorsed by the Colorado Republican Party. This is false. In fact, the Republican Party did not endorse any candidates for U.S. Senate in the Colorado Primary Elections.

22. In the Republican primary, an endorsement by the Republican Party of a candidate for a particular office is considered a material issue for voters. As such, the bylaws of the Colorado Republican State Central Committee ("CRC") specifically provide that "[n]o candidate for any designation or nomination for partisan public office shall be endorsed, . . . by the CRC. . . before the Primary Election, unless such candidate is unopposed in the Primary Election." Bylaws of the CRC, Article III, § 3.

23. And, despite the Mailers' false statement of fact otherwise, Rep. Ron hanks has not been endorsed by the Republican Party or even as a better candidate than O'Dea among Republicans; O'Dea has the support of many prominent members of the Republican Party, which includes endorsements from Republican State Senators Bob Rankin, Ray Scott and Jerry Sonnenberg, and former Republican state lawmakers Owen Hill, Rob Fairbank, Polly Lawrence, Keith Swerdfeger, Libby Szabo and Rob Witwer. Ernest Luning, *Current, former Colorado officials endorse Republican US Senate candidate Joe O'Dea,* (March 22, 2022),

https://www.coloradopolitics.com/elections/2022/current-former-colorado-officials-endorse-republican-us-senate-candidate-joe-odea/article_987baae6-a9f9-11ec-a81e-ef445de3bf21.html

24. The allegations in the Mailers are false and misleading descriptions of fact, made: (1) to deceive voters into believing that O'Dea supports restrictions on gun rights; (2) to confuse voters as to the Republican Party's affiliation, connection or association with Rep. Ron Hanks; (3) to deceive voters into believing that O'Dea does not have the support of officials in the Republican Party; and (4) to promote Rep. Ron Hanks by misrepresenting the true nature, characteristics, and qualities of O'Dea and the Campaign's bid for U.S. Senate.

25. The Mailers defame O'Dea, as they falsely represent that Rep. Ron Hanks was endorsed by the Republican Party, while O'Dea was not.

26. Christian Printers provided the necessary goods and / or services to send out the Mailers, and failed to designate the origin of, or provide the required disclaimers for, the Mailers, the result of which has caused, and continues to cause, irreparable harm to Plaintiffs.

***Defendant Christian Edwards Print + Graphics Purports to Specialized in Political Mail***

27. Defendant Christian Printers advertises its capabilities and familiarity with "political direct mail."

28. It purports to work on direct political mail based on its "shared values and interests" with the printing it provides.

29. Based on its advertisements to the public, Christian Printers is familiar with political direct mail like the ones at issue in this case. Yet it appears Christian Printers permitted the mailing here in clear violation of federal and state law.

***The Mailers Fail to Comply with Federal and State Disclaimer Requirements***

30. Federal law requires certain disclosures to allow voters to assess the identity of the speaker.

31. Pursuant to Federal Campaign Finance laws, 52 U.S.C.S. § 30120(a), whenever any person makes a disbursement for the purpose of financing communications expressly advocating the election or defeat of a clearly identified candidate, or a political committee makes a disbursement for the purpose of financing any communication, through any broadcasting station, newspaper, magazine, outdoor advertising facility, mailing, or any other type of general public political advertising, such communications must contain attribution statements which—

   a. if paid for and authorized by a candidate, an authorized political committee of a candidate, or its agents, shall clearly state that the communication has been paid for by such authorized political committee, [or]

   b. if paid for by other persons but authorized by a candidate, an authorized political committee of a candidate, or its agents, shall clearly state that the communication is paid for by such other persons and authorized by such authorized political committee; [or]

   c. if not authorized by a candidate, an authorized political committee of a candidate, or its agents, shall clearly state the name and permanent street address, telephone number, or World Wide Web address of the person who paid for the communication and state that the communication is not authorized by any candidate or candidate's committee.

32. Colorado law also requires disclaimers. A candidate committee, political committee, issue committee, small donor committee, political organization, political party, or other person making an expenditure in excess of or spending more than one thousand dollars per calendar year on a communication that must be disclosed under article XXVIII of the state constitution or under this article 45 or supports or opposes a ballot issue or ballot question, and

that is broadcast, printed, mailed, delivered; placed on a website, streaming media service, or online forum for a fee; or that is otherwise distributed shall include in the communication a disclaimer statement, which must include: (1) a statement that "[t]he communication has been paid for by (full name of the person paying for the communication)"; and (2) a statement identifying a natural person who is the registered agent if the person who paid for the communication is not a natural person.  Colo. Rev. Stat. § 1-45-108.3(1) and (2).

33. The Mailers do not contain the required disclaimers.

34. Specifically, the Mailers do not state who paid for them and who is responsible for their contents.  Concealing the source of the Mailers is material to the scheme, because it allows the groups behind the Mailers to conceal their involvement.

35. By hiding the source of the message, these groups are able to advertise to voters who might otherwise severely discount or ignore their message, and mislead voters as the Primary Elections approach.

***The False Statements in the Mailers are Designed to Affect the Outcome of the Primary Elections***

36. It is considered an election offense for a person to "knowingly make, publish, broadcast, or circulate . . . any false statement designed to affect the vote on any issue submitted to the electors at any election or relating to any candidate for election to public office." C.R.S. § 1-13-109(1)(a).

37. Statements made in the Mailers that Rep. Ron Hanks has been endorsed by the Republican Party, Ex. 2; Ex. 5, are false statements.  The inclusion of these false statements in

electioneering content is clear proof that, whomever is behind the scheme to misrepresent O'Dea and the Campaign intends for the statement to affect the ongoing vote.

## COUNT I – DEFAMATION

38. Plaintiffs incorporate herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

39. Defendants made or caused the publication of false statements, through the distribution of the Mailers to tens of thousands of voters, including falsely representing that O'Dea's competitor had been endorsed by the Republican Party.

40. The statements were materially false, including because they expressly stated that O'Dea did not have the endorsement of the Republican Party in the Primary Elections.

41. The false statements are reasonably susceptible of being understood as assertions of actual fact.

42. The false statements are material and defamatory in that the misrepresentations deceived voters into believing that O'Dea does not have the support or endorsement or the Republican Party, lowering O'Dea's reputation amongst voters in the Primary Elections, and causing harm to O'Dea.

43. Given the timing, the message, and the content of the false statements, the harm to O'Dea is particularly problematic.

44. The harm to O'Dea is such that it will be extremely difficult to restore, particularly considering that many voters have, and will continue, to fill out their mail ballots while being misinformed by these false statements.

45. Because of the nature of the false statements against O'Dea, Defendants are liable to O'Dea per se for the defamatory statements in the Mailers.

## COUNT II – CIVIL CONSPIRACY

46. Plaintiffs incorporate herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

47. Defendants have committed a civil conspiracy, because they have agreed and acted together in a concerted action to distribute the unlawful Mailers.

48. Defendants constitute two or more persons acting together.

49. Defendants are acting to accomplish the same objective in distributing the unlawful Mailers to voters ahead of the Primary Elections, in an attempt to influence the outcome thereof, and to benefit an undisclosed interested party.

50. Defendants were in agreement in the object and course of action leading up to and in distributing unlawful Mailers.

51. By distributing the Mailers, Defendants have committed an intentional, unlawful overt act.

52. The act of preparing and distributing the Mailers proximately caused damage to the Plaintiffs.

53. Once proven, the Defendants are jointly and severally liable to Plaintiffs.

## COUNT III – VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961, *et seq.*

54. Plaintiffs incorporate herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

55. The mail fraud statute criminalizes schemes or artifices "to defraud," where the defendants knowingly participated in that scheme, and used the interstate mails in furtherance of that scheme. 18 U.S.C. § 1341.

56. "To defraud" commonly refers "to wrongdoing one in his property rights by dishonest methods or schemes," and usually signifies the deprivation of something of value by trick, deceit, chicane or overreaching. *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924).

57. The intent of the mail fraud statute is to prevent the use of the mails in furtherance of such schemes. *McNally v. United States*, 483 U.S. 350, 358 (1987). To establish a mail fraud violation, one must prove the existence of a scheme to defraud and that the thing mailed was an integral part of the execution of the scheme so that the use of the mails was in this way "incident to an essential part of the scheme." *Pereira v. United States*, 347 U.S. 1, 8 (1954).

58. The distribution of the false and misleading Mailers by defendants was (1) a scheme to defraud, in that it was a wrongdoing against O'Dea in his right to run for Senate and the significant financial investment he made in the Campaign supporting that right; and (2) a scheme to defraud citizens of Colorado in an attempt to divert votes away from O'Dea. That scheme used trick and deceit that resulted in a significant deprivation of O'Dea's rights to run for Senate and a deprivation of his property rights in his financial investment in the Campaign.

59. It was the intention of Defendants that voters would receive the unlawful and misleading Mailers ahead of the Primary Elections. The Mailers were designed to affect the outcome of the Primary Election.

60. In furtherance of such scheme, defendants used mail, by placing the Mailers into, or authorizing their deposit, to be sent or delivered by the Postal Service (or a private or commercial interstate carrier).

61. The Mailers have allowed defendants, and the groups behind them, to advertise false statements to voters, and mislead them as they cast their votes.

62. By distributing the unlawful and misleading Mailers, Defendants have committed mail fraud.

63. RICO makes it unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity, to use or invest any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  18 U.S.C. § 1962(a).

64. 18 U.S.C. § 1961(1) defines "racketeering activity" to mean, inter alia, an act indictable under the mail fraud statute, § 1341, and defines "pattern of racketeering activity" as at least two acts of racketeering activity occurring within a stated time period.

65. Defendants are responsible for the distribution of the Mailers.

66. Defendants knowingly and willingly participated in the scheme to distribute the Mailers.

67. The distribution of the Mailers amounts to mail fraud, a predicate act as described above.

68. Defendants distributed at least two separate Mailers, and on information and belief mailed at least 400,000 Mailers in the state of Colorado. Each of these mailings amount to an individual mail fraud, evidencing a pattern of racketeering activity.

69. Defendants' use of the mail to distribute the Mailers, is an activity that affects interstate commerce.

70. On information and belief, the total cost of the Mailers is estimated at over $1,000,000, at least a portion of which is income derived by Christian Printers as a direct result of the pattern of racketeering activities.

## PRAYER FOR RELIEF

71. Wherefore, Plaintiffs respectfully request his court enter judgment in their favor against Defendants, as follows:

   a. Award actual, consequential, liquidated, economic and compensatory damages, as proven at trial or upon Motion to the Court.

   b. Award threefold general and compensatory damages in an amount that will fully and fairly compensate Plaintiffs for their injuries, damages, and losses.

   c. Permanently enjoin Defendants from distributing false and misleading mailers about O'Dea or the Campaign.

   d. Award attorneys' fees and costs of suit.

   e. Grant any other relief the Court deems appropriate and just.

| | |
|---|---|
| Dated this 15th day of June 2022. | /s/ *Brent Owen*<br>Brent R. Owen (Attn. Reg. #: 45068)<br>SQUIRE PATTON BOGGS (US) LLP<br>717 17th Street, Suite 1825<br>Denver, Colorado 80202<br>brent.owen@squirepb.com<br><br>***Attorney for Plaintiffs*** |